## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID ELLERBY | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-12-2832 |
| | : | Criminal No. CCB-07-064 |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |

### MEMORANDUM

David Ellerby, a federal prisoner, was convicted in 2008 of various drug crimes and sentenced to a mandatory term of life imprisonment. He now challenges his convictions and sentence through a motion filed under 28 U.S.C. § 2255. He has also filed numerous related motions, including several motions to appoint counsel. For the reasons stated below, Ellerby's motion under § 2255 will be denied except as to two of his claims of ineffective assistance of counsel. The court will order an evidentiary hearing as to those two claims, and his most recent motion to appoint counsel will be granted to assist him in that hearing. The remainder of his motions will be denied.

### BACKGROUND

Ellerby and a co-defendant, Jermall Lilly, were arrested on February 1, 2007, following the controlled purchase of cocaine by a confidential informant ("CI") and the execution of search warrants at locations associated with Ellerby and Lilly. On February 13, 2007, Ellerby was indicted on a single count of conspiracy to distribute and possess with intent to distribute cocaine and "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On January 16, 2008, a superseding indictment was returned including the following five counts: (1) conspiracy to

distribute and possess with intent to distribute 50 grams or more of cocaine and crack, in violation of 21 U.S.C. § 846 ("Count One"): (2) distribution of 50 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) ("Count Two"); (3) distribution of 50 grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) ("Count Three"); (4) distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) ("Count Four"); and (5) possession with intent to distribute cocaine and 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and (b)(1)(C) ("Count Five").  The evidence introduced at trial established the following facts.

CI Wallace Sanchez periodically received drugs from Ellerby, sold them, and provided Ellerby a portion of the proceeds.  Sanchez was incarcerated in 2005, and in June 2006 began to cooperate with law enforcement.  Sanchez was then released from prison.  Part of his cooperation included performing controlled purchases of drugs from Ellerby under the supervision of Baltimore City Police Department ("BCPD") Detective James Bradley.  BCPD officers gave Sanchez a phone to facilitate the transactions and allow officers to record conversations concerning drug sales.  Officers recorded a series of such conversations between Sanchez and Ellerby, and Sanchez engaged in several controlled purchases of cocaine and crack from Ellerby and Lilly during late 2006 and early 2007.

After one such controlled purchase, officers executed a search warrant at an apartment associated with Ellerby.  Inside, officers found Ellerby along with several hundred heroin-filled gel caps, more heroin, cocaine powder, a scale, various other drug paraphernalia, and phones whose numbers matched those Sanchez had used to communicate with Ellerby and Lilly regarding the controlled purchases.

During the seven-day jury trial, which began on July 28, 2008, defense counsel attacked Sanchez's credibility, eventually eliciting testimony that Sanchez acquired and sold drugs during the period of the investigation but without the government's knowledge or permission.  It also came to light that Sanchez had written a letter expressing a desire to harm someone he believed gave him counterfeit money in exchange for drugs.  The court required the government to produce certain policies regarding informants, and permitted the defense to re-call Bradley for further cross-examination.  Ultimately, however, the jury convicted Ellerby on all counts and convicted Lilly on Count One of conspiring to distribute cocaine (but not crack) and on Count Four.  At Ellerby's sentencing on November 14, 2008, the court determined that Ellerby was a career offender and had two previous felony drug convictions, and sentenced him to a mandatory term of life imprisonment as to Counts One, Two, and Three, and 360 months to run concurrently on Counts Four and Five.

Ellerby appealed on the following two issues: (1) whether the court committed reversible error in denying the defendants' motion for a mistrial or a continuance based on the government's late disclosure of impeachment evidence to the defense; and (2) whether the court committed reversible error in denying the defendants' post-trial motion for a new trial to call an expert to testify on the integrity of the investigation of the defendants, and in particular the alleged mishandling of the CI.  The Fourth Circuit affirmed the defendants' convictions.  *United States v. Ellerby*, 408 F. App'x 696 (4th Cir. 2011) (unpublished per curiam).

## ANALYSIS

Ellerby's filings assert various grounds for three main categories of relief: ineffective assistance of counsel, prosecutorial misconduct, and general error by the court.  The court will

3

address each category, and will then address the numerous other motions Ellerby has filed.

### I. Ineffective Assistance of Counsel

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). When a petitioner alleges a claim of ineffective assistance of counsel, he must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, a petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). That presumption accords to defense counsel "considerable latitude with respect to proper strategy." *Tice v. Johnson*, 647 F.3d 87, 102 (4th Cir. 2011). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Ellerby was represented by Ivan Bates through a pretrial hearing concerning a motion to suppress. Bates withdrew as counsel when a potential conflict came to light in February 2008. Idus Daniel then entered his appearance and represented Ellerby through trial. Francis Pommett represented Ellerby on appeal. Ellerby asserts that all three of his lawyers were constitutionally ineffective. Each of his arguments will be addressed in turn.

### A. Suppression Hearing

Before trial, Ellerby's initial counsel, Bates, filed a motion to suppress evidence obtained

through the execution of the search warrant, raising arguments concerning, among other things, the particularity of the warrant's description of the location to be searched and the accuracy of the supporting affidavit's representations concerning the location.  One issue centered on the warrant's specificity as to which apartment was to be searched; the warrant targeted the "second floor apartment" at the address in question, but the building had two second-floor apartments. The court held a hearing on the matter on October 24, 2007, and denied the motion to suppress.

During the hearing, Special Agent Michael Groth of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that it was his understanding that the second floor had just one apartment.  (Hearing Tr. 10/24/07 at 50-51.)  Groth testified that Sanchez told him that the correct door to enter on the second floor was the second door, but that Sanchez had never said there were two apartments.  (*Id.*)  Groth also testified that he reviewed the records of a 911 call from the address in question that described the caller, Shanetra Williams, as calling from the "second floor" of the address without specifying a particular apartment.  (*Id.* at 52.)  He further testified that officers had twice requested subscriber information from Baltimore Gas and Electric ("BGE"), and both times BGE returned information indicating that only one subscriber was registered for the second floor.  (*Id.* at 52-56.)

Ellerby now argues that a "phone bill statement" of Tyrah Robinson demonstrates the falsity of statements in the affidavit supporting the search warrant, and of Groth's testimony. (ECF No. 198-1 at 6[1] ¶ 1.)   He says that, had Bates provided the court with this document, the court would have authorized a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and suppressed the evidence against him.  Ellerby also argues that Bates was ineffective for failing to present Robinson's testimony, (*id.* at 10 ¶ 7), as well as the testimony of Williams, who Ellerby

---

[1] Page references to this document refer to Ellerby's handwritten pagination.

says leased the apartment in question, (*id.* at 9 ¶ 5).  In an affidavit supporting his reply, Ellerby

explains that Robinson's phone bill statement would have shown that the 911 call came from her

phone number, not Williams's, and that Robinson's and Williams's testimony would have

bolstered this conclusion.  (ECF No. 222-2 at 13-14 ¶ U.)

Ellerby has failed to show either deficient performance or prejudice.  First, Bates's failure

to produce the phone record (if, in fact, he possessed such a record) did not render his

performance deficient.  Ellerby fails to recognize that the point of Groth's testimony concerning

the 911 call was that the record merely indicated that the call came from the "second floor"

apartment, and therefore suggested that there was only one apartment on the second floor.

Whether the call came from a number associated with Williams, Robinson, or anyone else, the

record's indication that the call came from the "second floor" apartment remains true.  To the

extent Ellerby says Bates should have done more to show Groth was lying, Bates had already

obtained and produced for the court a number of related pieces of evidence, including the

affidavits of both Robinson and Williams and BGE records for two separate second-floor

apartments.  (*See* Ellerby's Suppl. Mem. Supp. Mot. Suppress Exs. 3-7, ECF No. 22.)  Those

affidavits and records tended to contradict Groth's testimony.  Nevertheless, the court credited

that testimony, and denied the motion to suppress.  Bates's failure to produce the phone record,

therefore, does not render his performance deficient.  Nor was there prejudice, as Ellerby has

failed to show that the result of the hearing would have been different had the court seen a phone

record that would have done little, if anything, to impeach Groth's testimony.  Though Ellerby

argues otherwise, his "conclusory allegations are insufficient to establish the requisite prejudice

under *Strickland*."  *United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004).  Accordingly, this

claim fails.

### B.  Trial Strategy

Next, Ellerby argues that Daniel, his trial counsel, was constitutionally ineffective for focusing on discrediting Sanchez rather than putting on a defense that conceded Ellerby's guilt as to the sale of powder cocaine and focused only on contesting his guilt as to the sale of crack. (ECF No. 198-1 at 6-7 ¶ 2.)   He also says Daniel was ineffective in soliciting testimony from Sanchez concerning his request for a gun from Ellerby.  (*Id.* at 17 ¶ 16.)  But where a strategy "might be harmful to the defense," an attorney does not perform deficiently in failing to pursue that strategy.  *Harrington v. Richter*, 562 U.S. 86, 108 (2011); *see also id.* at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time . . . .").  Given the strong presumption that Daniel's strategic decisions fell within the wide range of reasonable professional assistance, and that Ellerby's preferred strategy would have conceded his guilt on Count One, Daniel's performance in this regard was not deficient.  Further, Ellerby has failed to show a reasonable probability that Ellerby's preferred strategy would have led to a different result as to either his conviction or sentence, or that not asking Sanchez about the gun would have done so.  Accordingly, this argument fails.

### C.  Duty to Investigate

Ellerby also asserts that Daniel failed to "investigate, locate, and present the testimony" of a number of witnesses, including Nicole Nettles, Sheneika Longhorn, Eugene Foster, Joseph Vaughn, Latia Dillards, Elberta Saunders, and Tenesia Saunders.[2]  (ECF No. 198-1 at 7-14 ¶¶ 3-11.)  Ellerby says that Nettles, Longhorn, Foster, Vaughn, and Dillards would have provided

---

[2] Ellerby also says that Williams would have testified as to her BGE account in a manner that discredited Bradley.  It is unclear how this testimony would be relevant to any of the issues at trial, rather than to Ellerby's denied motion to suppress.  In any event, even assuming the court would have allowed such testimony, its absence did not prejudice Ellerby.

testimony concerning Sanchez's credibility, and Elberta and Tenesia Saunders would have

testified that the recorded conversations between Ellerby and Sanchez actually concerned the

sale of clothing.  As to the first set of witnesses, Ellerby's defense was, in fact, already focused

on attacking Sanchez's credibility.  There is nothing to suggest that more testimony concerning

Sanchez's drug sales, or his involvement in other illegal activity, would have swayed the jury.

And as to the second set of witnesses, their testimony would do nothing to counter the fact that

large quantities of drugs and items related to drug sales were found in the apartment with

Ellerby, or to counter the video evidence.  Accordingly, Ellerby has not shown a reasonable

probability that the result at trial would have been different with the testimony of these

individuals.

### D.  "Paid Informant" Instruction

Ellerby says Daniel's failure to ask the court to provide the jury with a "paid informant"

instruction rendered his performance constitutionally ineffective.  (*Id.* at 14-15 ¶ 12.)  But the

court did, in fact, instruct the jury to examine Sanchez's testimony "with caution, and weigh it

with great care."  The court further instructed the jury to consider whether Sanchez had an

incentive to testify falsely because of his plea agreement with the government, whether he would

benefit more by lying or by telling the truth, and whether he was motivated by "hopes of

personal gain."  Ellerby has failed, therefore, to demonstrate deficient performance or prejudice.

### E.  Plea Deal and Ellerby's Review of Video Evidence

Ellerby also says he rejected a plea offer because Bates failed to show him video

evidence despite his repeated requests.  (*See* ECF No. 198-1 at 16 ¶ 13; ECF No. 222-2 at 11-12

¶¶ O-R.)  "The Sixth Amendment right to the assistance of counsel during criminal proceedings

extends to the plea-bargaining process." *Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir.

2013) (citing *Missouri v. Frye,* 132 S. Ct. 1399, 1405 (2012)).  Thus, "[d]uring plea negotiations

defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler v. Cooper*, 132

S. Ct. 1376, 1384 (2012) (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)).  "[T]he

same two-part standard" set forth in *Strickland* is "applicable to ineffective-assistance claims

arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  In all cases, including

those involving the plea process, deficient performance is that which falls below an objective

standard of reasonableness, overcoming the presumption that counsel's conduct falls within the

wide range of reasonable professional assistance. *Merzbacher*, 706 F.3d at 363.  As to prejudice,

"[i]n the context of pleas a defendant must show the outcome of the plea process would have

been different" but for counsel's deficient performance." *Lafler*, 132 S. Ct. at 1384.  Where the

allegedly deficient performance led to a plea offer's rejection,

> a defendant must show that but for the ineffective advice of counsel there is
> a reasonable probability [1] that the plea offer would have been presented to
> the court (*i.e.,* that the defendant would have accepted the plea and the
> prosecution would not have withdrawn it in light of intervening
> circumstances), [2] that the court would have accepted its terms, and [3] that
> the conviction or sentence, or both, under the offer's terms would have been
> less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.

Ellerby says Bates did not show him most of the government's video evidence against

him; had he seen that evidence, Ellerby says he "most certainly would have elected [sic] to

request some sort of plea bargain from the government."  (ECF No. 198-1 at 16 ¶ 13.)  In an

affidavit attached to his reply, Ellerby says he wrote several letters to Bates indicating his desire

to review the government's audio and video evidence before deciding whether to accept the

government's 12-year plea offer.  (ECF No. 222-2 at 11 ¶ O.)  Bates visited Ellerby at the Talbot

County Detention Center and reviewed "several audio recordings" and one video recording with Ellerby. (*Id.*) But Ellerby says Bates was unable to show him "any other video evidence during this meeting" because Bates's computer "kept cutting off due to low battery." (*Id.*)

Later, in December 2007, Ellerby says Bates sent his private investigator to meet with Ellerby and review the audio and video evidence with him. (*Id.* at 12 ¶ Q.) Though the investigator had a CD-ROM with the evidence on it, he was unable to get it to play on his computer. (*Id.*) Ellerby "explained to this investigator that [he] was concern[ed] with what the video showed inorder [sic] to make [his] decision as far as proceeding to trial." (*Id.*) The investigator told him that he would relay this message to Bates and "would probably be back with another version of these recordings." (*Id.*)

Ellerby says he again notified Bates that he had not yet seen the video evidence. (*Id.* at 12 ¶ R.) He says Bates promised to review the recordings with him and send him a transcribed version of the recordings. (*Id.*) Though Ellerby did receive the transcription, he called Bates to express his view that he "wanted to review the actual video" of him and Sanchez "meeting and talking face to face." (*Id.*) Ellerby says that Bates "again promised [him] that he would soon be over to the Detention Center to review" the video evidence with him. (*Id.*) Ellerby suggests, however, that did not see this evidence until trial.

The government responds that Ellerby's statements are not credible "given Ellerby's clearly active involvement in his own defense," and the fact that "there were plea offers made to [Ellerby] that he refused to accept[.]" (Gov't Opp'n. 19, ECF No. 213.) The government also reproduces a portion of the text of an email[3] Bates sent to government counsel in which Bates writes that he "did take the videos and audio tapes over to" Ellerby, and both Bates and his

---

[3] The government does not attach the actual email.

partner "let him see them and listen to them."  (*Id.* at 13.)

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  "When a colorable Sixth Amendment claim is presented, and where material facts are in dispute involving inconsistencies beyond the record, a hearing is necessary."  *United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992); *see also Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970) ("There will remain, however, a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court.").

Ellerby's argument that he would have accepted the government's 12-year plea offer had he seen the videos, and his sworn assertions that he repeatedly notified Bates of his need to see them to make an informed decision as to the plea offer, present a colorable claim of ineffective assistance of counsel.  As to deficient performance, it is objectively unreasonable, and outside the realm of strategic consideration, to fail to show a defendant evidence the defendant has specifically stated he must see before deciding whether to accept a plea offer.  As to prejudice, Ellerby says he would have accepted the 12-year plea offer (which was far less severe than the life sentence he received) had he seen the video evidence, and the government does not argue that it would have withdrawn the offer or the court would not have accepted its terms.  Rather, the government points to the text of an email it received from Bates disputing Ellerby's account. Even if the government had obtained and offered Bates's affidavit, however, there would exist a factual dispute hinging on credibility that the court cannot resolve here.  Accordingly, the court must, under 28 U.S.C. § 2255(b), order an evidentiary hearing on this issue.

### F.   Plea Deal and Ellerby's 21 U.S.C. § 851 Sentence Enhancement

Ellerby also argues that his counsels' failure to explain the sentencing enhancement the government sought (and obtained) caused him to reject a plea offer.  Under 21 U.S.C. § 841, "a person who commits a federal drug violation, after a prior conviction for another drug offense has become final, is subject to" certain sentencing enhancements, including mandatory minimum sentences.  *United States v. Campbell*, 980 F.2d 245, 249 (4th Cir. 1992).  When seeking an enhanced sentence under § 841, the government must file a notice (also called an "information") pursuant to 21 U.S.C. § 851, before trial or entry of a guilty plea, stating the previous convictions it will rely on to justify the enhancement.  21 U.S.C. § 851(a).  "'A failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'"  *United States v. Ray*, 547 F. App'x 343, 346 (4th Cir. 2013) (unpublished per curiam)[4] (quoting *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001)).  In addition, "a lawyer who advises his client whether to accept a plea offer falls below the threshold of reasonable performance if the lawyer makes a 'plainly incorrect' estimate of the likely sentence due to ignorance of applicable law of which he 'should have been aware.'"  *United States v. Booze*, 293 F.3d 516, 518 (D.C. Cir. 2002) (citation omitted); *see also United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) ("By grossly underestimating Gordon's sentencing exposure in a letter to his client, Dedes breached his duty as a defense lawyer in a criminal case 'to advise his client fully on whether a particular plea to a charge appears desirable.'" (citation omitted)).

On January 25, 2008, the government filed a notice under § 851 indicating that Ellerby was convicted in 1996 of possession with intent to distribute a controlled dangerous substance.

---

[4] Unpublished cases are cited for the persuasiveness of their reasoning, not for any precedential value.

Ellerby says Bates mailed him a copy of the notice, but did not explain that the filing of the § 851 enhancement notice meant Ellerby could now face a mandatory life sentence upon conviction.  (ECF No. 222-2 at 13 ¶ T.)[5]

In any event, Bates moved to withdraw as counsel on February 15, 2008, and Daniel was appointed as Ellerby's counsel.  But Daniel, Ellerby says, incorrectly told him that a conviction for "simple possession" of drugs could not be a predicate offense for a sentencing enhancement under § 841.  (ECF No. 198-1 at 16 ¶ 14.)  Ellerby says he relied on this statement in not taking the government's plea offer.  And later, on the first day of trial, July 28, 2008, the government filed an amended notice under § 851, this time adding an additional conviction for possession of cocaine.  (*See* ECF No. 110.)  Ellerby says Daniel specifically told him, "I do not believe that the government can rely on a simple possession as a predicate offense."  (ECF No. 222-2 at 16 ¶ X.)  That statement, if Daniel made it, was untrue.[6]

First, as to Bates, deficient performance may exist because, at least according to Ellerby, plea negotiations were ongoing and Bates never told him how the § 851 notice would affect his sentence if convicted.  As to prejudice, Ellerby has suggested he would have agreed to plead guilty had he known he faced a mandatory life sentence.  The government points to a portion of an email from Bates in which Bates states that Ellerby "knew that if he did not take the offer he would get life."  But the court is not permitted to resolve such a fact dispute against Ellerby

---

[5] Even now, Ellerby's understanding of the enhancement notice appears incorrect; that notice listed just one predicate conviction, which would suggest a mandatory minimum sentence of 20 years.  *See* 21 U.S.C. § 841(b)(1)(A) (2006), *amended by* Pub. L. No. 110-425, Oct. 15, 2008, 122 Stat. 482821.

[6] Section 841(b)(1)(A) authorizes an enhanced sentence after a previous conviction for "a felony drug offense."  21 U.S.C. § 841(b)(1)(A).  That term is statutorily defined as any offense "punishable by imprisonment for more than one year under any law of the United States or of a State . . . that prohibits or restricts conduct relating to narcotic drugs."  21 U.S.C. § 802(44).  Accordingly, "[n]o element of trafficking or distribution is required" for an offense to qualify as a prior felony drug offense under § 841(b)(1)(A).  *United States v. Jones*, 559 F.3d 831, 837 (8th Cir. 2009).

without first holding an evidentiary hearing.  Accordingly, the court will order an evidentiary

hearing on this issue.

Second, as to Daniel, Ellerby alleges that Daniel affirmatively misrepresented the law to

him when Ellerby asked whether a conviction for "simple possession" of drugs could be used as

a predicate conviction to enhance his sentence.  Daniel appears to have engaged the government

in plea discussions, as Ellerby says he learned in 2011 that the government had made a 20-year

plea offer to Daniel (an offer Ellerby says Daniel never communicated to him).  (*See* ECF No.

215 at 9-15.)  Affirmatively misrepresenting the possible sentence to which Ellerby was exposed,

in the context of ongoing plea negotiations, could constitute deficient performance.  And Ellerby

has made an adequate showing of prejudice by indicating that he would have accepted the plea

deal had he learned of it.  The court therefore will also order a hearing on this issue.

### G.  Failure to Expose Alleged Prosecutorial Misconduct

Ellerby claims that Daniel "was ineffective for not exposing the government for using

false evidence."  (ECF No. 198-1 at 17 ¶ 15.)  The only support Ellerby provides for this claim is

"[s]ee prosecutorial misconduct claim 1."  (*Id.*)  It is unclear what "false evidence" Ellerby is

referring to, how Daniel performed ineffectively in failing to identify the alleged falsity and

"expose" it, and how Ellerby was prejudiced by Daniel's alleged failure.[7]  Accordingly, this

claim fails because it lacks the specificity needed to demonstrate either deficient performance or

prejudice.  *See Terry*, 366 F.3d at 316.

### H.  Failure to Request Instruction on Dual Testimony

Ellerby also argues that Daniel performed ineffectively in failing to ask the court to

provide the jury with an instruction concerning the "dual testimony" of two federal agents who

---

[7] Further, as discussed below, all of Ellerby's prosecutorial misconduct claims lack merit.

testified as both lay witnesses and experts.  (ECF No. 198-1 at 17-18 ¶ 17.)  Even assuming

deficient performance, Ellerby has failed to show a reasonable probability that such an

instruction would have changed the jury's verdict.  This claim therefore fails.

### I.   Failure to Object to Second § 851 Notice

Next, Ellerby argues that Daniel was ineffective for failing to object to the government's

filing of an amended § 851 notice "after the start of trial."  (*Id.* at 18 ¶ 18.)  A notice under § 851

must be filed "before trial, or before entry of a plea of guilty."  21 U.S.C. § 851.  "The primary

purpose of this provision is to give the defendant notice of the government's intention to seek an

enhanced sentence based on the defendant's prior convictions, giving the defendant an

opportunity to challenge the use of the prior convictions and to prevent sentencing errors."

*United States v. Beasley*, 495 F.3d 142, 149 (4th Cir. 2007).  The Fourth Circuit has expressly

declined to define the precise limit presented by the words "before trial."  *Id.* at 149-50.  Other

courts, however, have held that "the phrase 'before trial' in § 851(a)(1) means before the

commencement of jury selection."  *United States v. White*, 980 F.2d 836, 842 (2d Cir. 1992).

And though it should be filed sooner, a notice filed on the day trial is set to begin may, under

certain circumstances, be permissible.  *See United States v. Rice*, 43 F.3d 601, 603, 604 (11th

Cir. 1995) (holding that § 851 was satisfied where "[o]n the day [the defendant's] trial began, but

before the jury was empaneled, the Assistant United States Attorney announced in open court

that he was filing an information pursuant to sections 841(b)(1)(A) and 851(a) notifying the court

he would seek an enhanced sentence of mandatory life imprisonment," and "[t]he government

provided defense counsel with two copies of the information" (footnotes omitted)).

In this case, the government stated in open court on July 28, 2008, before jury selection

commenced, that it was "now filing [its] amended notice of prior felony drug convictions

pursuant to 21 United States Code 851, as to Mr. Ellerby . . . with the courtroom deputy."  (ECF

No. 222-12 at 4.)  Ellerby does not argue that the government did not provide him and his

attorney, and a court Clerk's office employee, with a copy of the notice at that time.  Rather, he

argues that a stamp on the notice suggests it was not filed until July 30, 2008, two days into the

trial.  But where the government serves the defendant with a notice under § 851 prior to the

commencement of jury selection, and orally advises the court that it is filing the notice, the

timing requirements of § 851 are satisfied—even if the notice itself "reveals a filing date . . .

after the start of trial."  *United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir. 1990).

Accordingly, Ellerby can demonstrate neither deficient performance nor prejudice stemming

from Daniel's failure to object to the timing of the government's filing of the § 851 notice, and

this claim fails.

### J.   Other Allegations Concerning Daniel

Ellerby raises several other conclusory allegations stemming from Daniel's alleged

ineffective assistance.  First, he says Daniel did not review the audio and video evidence with

Ellerby before trial, and did not produce witnesses to testify as to Sanchez's drug sales while

acting as a government informant.  (ECF No. 198-1 at 20 ¶ 20.)  This allegation fails both prongs

of *Strickland*.  As to deficient performance, Ellerby does not suggest that Daniel did not review

the audio and video evidence—just that Daniel did not review it with him.  Ellerby does not

argue that he told Daniel he wanted to see the recordings before making a plea decision.  (*See*

ECF No. 222-2 at 2 ¶ B.)  And he does not say how Daniel should have known who could have

testified concerning Sanchez's drug sales.  As to prejudice, Ellerby has not attempted to argue

16

that there is a reasonable probability that the outcome would have been different had Daniel reviewed this evidence with him or sought out these unidentified witnesses.

Second, Ellerby says Daniel failed to object to the "amending" of the indictment to include offenses involving powder cocaine.  (ECF No. 198-1 at ¶ 24.)  But Ellerby does not explain how the return of the superseding indictment involved any error, and he therefore cannot show either deficient performance or prejudice on Daniel's part.

Third, Ellerby says Daniel failed to "present" Ellerby with all of the testimony heard by the grand jury so that Ellerby could "ensure that none of the witnesses testified falsely," and failed to impeach the government's witnesses through the use of their grand jury testimony.  (*Id.* ¶ 25.)  Even assuming deficient performance, this claim fails because Ellerby does not argue that these alleged failures prejudiced him.

Fourth and finally, Ellerby says Daniel failed to secure an expert witness to "combat" the government's audio and video transcripts.  (*Id.* ¶ 26.)  This claim fails because Ellerby has shown neither that Daniel performed deficiently in not using an expert witness, nor that he was prejudiced by the lack of such a witness.

Accordingly, the remaining claims based on Daniel's alleged ineffective assistance fail.

### K.  Allegations Concerning Appellate Counsel Pommett

Ellerby also raises several arguments suggesting Pommett performed ineffectively, but all are meritless.  First, Ellerby says he was improperly categorized as a career offender, and this mistake led to his life sentence.  (*Id.* at 19 ¶ 19 & 20 ¶ 22.)  He says Daniel objected to the improper certification of certain predicate convictions at his sentencing, but Pommett did not raise the issue on direct appeal.  Even assuming deficient performance, however, Ellerby's

categorization as a career offender did not give rise to his mandatory life sentence, which arose

from the sentencing enhancements of § 841.  He has therefore failed to establish prejudice, and

this claim fails.

Second, and relatedly, Ellerby says Pommett failed to argue on direct appeal that the

government did not adequately establish the convictions used to support the § 851 notice.  (*Id.* at

20 ¶ 21.)  But Ellerby has not shown that the records used to support that notice were

inadequately authenticated, and Pommett did not act deficiently in declining to raise this

meritless argument on appeal.

Finally, Ellerby says Pommett failed to "raise the issue of the new crack law" on direct

appeal.  Ellerby does not attempt to explain how Pommett performed deficiently in declining to

argue this issue, or how any alleged deficiency prejudiced him. This claim therefore also fails.

## II.  Prosecutorial Misconduct

Ellerby also raises various claims of prosecutorial misconduct.  All are procedurally

defaulted.  "The general rule in federal habeas cases is that a defendant who fails to raise a claim

on direct appeal is barred from raising the claim on collateral review."  *Sanchez-Llamas v.*

*Oregon*, 548 U.S. 331, 350-51 (2006).  A federal prisoner asserting under 28 U.S.C. § 2255 a

claim never presented on direct appeal has "procedurally defaulted the claim," which usually

precludes consideration of its merits.  *Bousley v. United States*, 523 U.S. 614, 621 (1998).  None

of Ellerby's prosecutorial misconduct arguments were raised on direct appeal.  Accordingly,

claims based on prosecutorial misconduct are procedurally defaulted unless Ellerby "can

establish (1) that he is 'actually innocent' or (2) 'cause' for the default and 'prejudice' resulting

therefrom."  *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012).

Ellerby has not shown that he is actually innocent. "To establish actual innocence, [a] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). Ellerby admits his guilt as to the offenses of which he was convicted relating to cocaine and heroin, but asserts he is innocent of any offense concerning crack. He says Sanchez must have obtained the crack he provided the officers from Sanchez's own home, and as support he argues that an audio recording demonstrates that Sanchez entered his home after visiting Ellerby but before providing crack to the officers. But there was ample evidence introduced at trial to support the jury's determination that Ellerby did, in fact, sell the crack to Sanchez. Even if evidence had been presented to the jury suggesting Sanchez could have obtained the crack from his own home, the court cannot conclude that no reasonable juror would have convicted Ellerby of the crack-based offenses. Accordingly, Ellerby has not established his actual innocence of those offenses.

Neither has he shown cause and prejudice. Cause exists where "some objective factor external to the defense" impeded efforts to raise the claim earlier. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Though the Supreme Court has not precisely defined prejudice in this context, it has suggested that a successful showing of prejudice requires the presence of constitutional error. *See United States v. Frady*, 456 U.S. 152, 169 (1982) (holding that where the alleged error concerns a jury instruction, prejudice exists only if the error "so infected the entire trial that the resulting conviction violates due process"). Ellerby has shown neither cause nor prejudice, as his prosecutorial misconduct claims could have been brought earlier,[8] and none

---

[8] In one of his many filings, Ellerby says cause exists to excuse procedural default because the Fourth Circuit denied his request to file a pro se supplemental brief on direct appeal. (*See* ECF No. 226.) He does not, however, state

of the asserted errors (assuming they were errors) were sufficiently serious to implicate constitutional protections.

Accordingly, all Ellerby's claims of prosecutorial misconduct are procedurally barred from consideration.  Even if they were not so barred, however, those claims fail for the reasons that follow.

### A.  Presentation of Allegedly False Testimony

Ellerby makes two arguments concerning the government's supposed use of false testimony.  In order to prevail on a claim "that the prosecution knowingly introduced perjured testimony," a petitioner must "demonstrate that: (1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict."  *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (citations omitted).  Both of Ellerby's claims fail this test.

First, Ellerby argues the government allowed Agent Groth to "testify falsely" at the suppression hearing that a 911 call came from the apartment in which Ellerby was selling drugs. (ECF No. 198-1 at 21 ¶ 2.)  But as already explained, Groth testified that a record of the 911 call showed that it originated from "second floor" apartment, which suggested to him that there was only one apartment on the second floor. Ellerby has produced nothing to suggest that Groth's testimony was false.

Second, Ellerby argues the government allowed Bradley, one of the detectives supervising Sanchez, to testify falsely at trial that Bradley gave Sanchez only "old styled bills" for use in controlled purchases of drugs from Ellerby, when, in Ellerby's view, photocopies of

---

with any specificity which, if any, of his prosecutorial misconduct claims he sought to raise in the supplemental brief.

the bills introduced as evidence showed that "all the bills . . . were new styled bills." (*Id.* at 22 ¶ 3.) Even assuming this testimony was false and the government knew of its falsity, the jury was presented with photocopies of the bills and therefore could have readily discerned a contradiction between Bradley's testimony and the bills' appearance. Accordingly, there is no reasonable probability that any false testimony on this point could have affected the verdict.

### B. Closing Argument

Ellerby makes two arguments concerning the government's closing argument at trial. "In determining whether a defendant's due process rights were violated by a prosecutor's closing argument, [a court must] consider (1) whether the remarks were, in fact, improper, and, (2) if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial." *United States v. Lighty*, 616 F.3d 321, 359 (4th Cir. 2010). In determining prejudice, courts look to (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury. *Id.* at 361.

Ellerby first argues that the government "broke the golden rule and ask[ed] the jury to put themselves in Mr. Sanchez['s] shoes." (ECF No. 198-1 at 22 ¶ 4.) Next, he argues that the government improperly suggested that Sanchez was always under police supervision during the controlled purchases of drugs from Ellerby, when in fact there were times Sanchez was not

supervised when he could have obtained the crack from an alternative source.  (*Id.* at 24 ¶ 2.)

Even assuming these statements were improper, application of the above factors makes clear that

the statements did not so prejudice Ellerby's substantial rights so as to deny him a fair trial.

Accordingly, both arguments fail.

### C.  Statements to Grand Jury

Ellerby also states he "wants to reserve the argument" that the government improperly

failed to instruct the grand jury that it could not find that he conspired with Sanchez.  (*Id.* at 23 ¶

3 & 25 ¶ 3.)  This argument lacks both specificity and support, and therefore fails.

### D.  Use of Allegedly False Transcripts

Ellerby argues that the government presented the jury with false transcripts of the audio

and video evidence against him.  (*Id.* at 25 ¶ 6.)  In his reply, Ellerby points to several instances

where, in his view, the transcript provided to the jury misstated the actual words spoken in the

recordings.  (ECF No. 222-2 at 2-3 ¶ B.)  But Ellerby does not suggest that any transcription

error was intentional, nor does he suggest any error so prejudiced him as to deny him a fair trial.

This claim therefore fails.

### E.  Alleged Violations of Evidence Rules

Ellerby says the government introduced improper character evidence in violation of

Federal Rule of Evidence 404(b) by eliciting testimony suggesting he gave Sanchez drugs in

2000 and 2005.  (ECF No. 198-1 at 25 ¶ 4.)  This testimony was not improper, however, as it

showed proof of knowledge and intent.  *See* Fed. R. Evid. 404(b)(2).  Ellerby also argues that the

government improperly introduced expert testimony without laying an adequate foundation.

(ECF No. 198-1 at 25 ¶ 5.)  Ellerby provides no information, however, as to what expert

testimony he finds objectionable or how the government failed to lay an adequate foundation. Accordingly, both arguments fail.

### III. Other Alleged Errors

Ellerby also argues that the court erred in failing to provide the jury with an adequate co-conspirator instruction, and in not dismissing the crack conspiracy count after Lilly was found not guilty on that count. (*Id.* at 23 ¶¶ 1-2.)  Both of these arguments are procedurally defaulted for the reasons stated above.  Even if they were not, however, they would fail.  Ellerby argues that the court erred in not instructing the jury that neither Sanchez nor Nettles could have been part of the conspiracy charged in Count One.  But the court did instruct the jury that Sanchez could not be considered a co-conspirator.  As to Nettles, Sanchez testified that she gave him crack on behalf of Ellerby, and the jury therefore could lawfully have found that she was part of the conspiracy.  Accordingly, there was no error.  For the same reason, the court did not err in refusing to dismiss the crack conspiracy count.

Ellerby's final substantive argument is that his sentence was impermissible under *Alleyne v. United States*, 133 S. Ct. 2151 (2013).  This argument fails because *Alleyne* did not overrule *Almendarez–Torres v. United States,* 523 U.S. 224 (1998) and in any event "*Alleyne* has not been made retroactively applicable to cases on collateral review."  *United States v. Stewart*, 540 F. App'x 171, 172 n.* (4th Cir. 2013) (unpublished per curiam); *see also United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014); *In re Payne*, 733 F.3d 1027, 1030 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *In re Kemper*, 735 F.3d 211, 212 (5th Cir. 2013) (per curiam); *United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013).

### IV. Other Pending Motions

Ellerby has also filed a number of other motions that the court will now address.

### A.  Motions to Amend 28 U.S.C. § 2255 Motion and for Extension of Time

Ellerby filed several motions to amend his § 2255 motion.  The court has already

addressed and rejected the claims Ellerby seeks to add, and will therefore deny those motions as

moot.  The court will also deny as moot Ellerby's motion for an extension of time to file a

supplemental brief in support of his claims.

### B.  Motions Seeking Transcripts and Other Materials

Several of Ellerby's motions ask the court to provide him with various transcripts

connected to his case.  Under 28 U.S.C. § 753(f), a federal prisoner who has filed a § 2255

motion and has been permitted to pursue that motion in forma pauperis may receive a transcript

at the government's expense if the court "certifies that the suit . . . is not frivolous and that the

transcript is needed to decide the issue presented by the suit or appeal."  28 U.S.C. § 2255.  But

the indigent prisoner must show a particularized need for the transcript, and may not obtain it at

the government's expense "merely to comb the record in the hope of discovering some flaw."

*United States v. Shoaf*, 341 F.2d 832, 833-34 (4th Cir. 1964).  Most of Ellerby's claims are

frivolous, and his non-frivolous claims do not require transcripts to decide the issues presented.

Accordingly, the court will deny Ellerby's motions seeking transcripts.  Ellerby remains free,

however, to contact the court reporter and pay for these transcripts himself.

Portions of Ellerby's motions also seek transcripts of grand jury testimony, but Ellerby

has not shown any entitlement to that testimony and the court will not order its production.  The

court will also deny as moot the portions of Ellerby's motions seeking copies of the

government's exhibits in his suppression hearing, as Ellerby's claims relating to that hearing are

frivolous.

### C.  Motions to Appoint Counsel

Ellerby has filed several motions to appoint counsel.  His most recent motion will be granted to the extent Ellerby seeks assistance on the claims of ineffective assistance of counsel as to which the court will order an evidentiary hearing, and will otherwise be denied.  His previous motions to appoint counsel will be denied.

### D.  Motions Seeking Discovery

Ellerby has also filed motions for discovery in connection with his § 2255 motion.  Those motions are denied to the extent they seek information not connected to the two claims of ineffective assistance of counsel for which the court will order an evidentiary hearing.  To the extent those motions seek information connected to those claims, they are denied without prejudice and may be renewed by his appointed counsel if appropriate.

### E.  Motions Seeking "Reimbursement"

Finally, Ellerby filed two motions for "reimbursement," claiming that following his conviction, Daniel helped him arrange for a private investigator to interview certain individuals. Ellerby says the investigator obtained his money through fraud, and apparently asks the court to order the reimbursement of the fee paid to the investigator.  A § 2255 motion is not the appropriate vehicle for such a claim, however, and these motions will therefore be denied.

### CONCLUSION

For the reasons stated above, all of Ellerby's claims under 28 U.S.C. § 2255 will be dismissed, except the two claims of ineffective assistance of counsel described above for which the court will order an evidentiary hearing.  Ellerby's motions to amend and for an extension will

be denied as moot; his motions seeking transcripts will be denied; his most recent motion to

appoint counsel will be granted to assist him in the forthcoming evidentiary hearing, and his

previous motions to appoint counsel will be denied; his motions seeking discovery will be denied

without prejudice as to the surviving claims of ineffective assistance of counsel and will

otherwise be denied; and his motions seeking reimbursement will be denied.  The court will not

at this time address his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) based on

the retroactive application of Amendment 782 to the U.S. Sentencing Guidelines.

      A separate order follows.


<u>July 21, 2015 </u>                 <u>       /S/              </u>
Date                                    Catherine C. Blake
                                     United States District Judge